IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANTHONY J. NOCELLA, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>MARCUS GARDNER, in his individual capacity, and WASATCH COUNTY,<br><br>        Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:21-cv-00476-TC-DAO<br><br>District Judge Tena Campbell<br>Magistrate Judge Daphne A. Oberg |

Before the court is Defendants Marcus Gardner and Wasatch County's motion for partial judgment on the pleadings, filed under Federal Rule of Civil Procedure 12(c).  (ECF No. 9.)  For the following reasons, the court GRANTS the Defendants' motion and DISMISSES the surviving negligence claim without prejudice.

**FACTUAL BACKGROUND**

Plaintiff Anthony Nocella is a recreational runner.  With dreams of competing in the Boston Marathon, he entered the Utah Valley Marathon—a Boston qualifier—on June 1, 2019.  The race starts in Wasatch County, Utah, and the course follows Main Canyon Road for about the first seven miles.  Main Canyon Road has two lanes: a south lane and a north lane.  At 6:00 AM, the race began, with the competitors running in both lanes.  Dr. Nocella was near the front of the pack.  Between miles three and six, Dr. Nocella noticed Wasatch County Deputy Sheriff Marcus Gardner driving a sheriff's pickup truck toward the runners in the north lane.  According to Dr. Nocella, Deputy Gardner was traveling about thirty miles an hour and was not using the truck's siren.  Deputy Gardner appeared to be using his truck as a means of crowd control, forcing

runners to shift from the north lane to the south lane of Main Canyon Road.  Several runners leapt into the south lane to avoid the truck's path.

At that moment, Dr. Nocella was running on the far-right side of the south lane—near the middle of Main Canyon Road.  The truck was approaching to his right.  Suddenly, the truck's passenger-side mirror struck Dr. Nocella's right side (specifically, his shoulder, arm, and hand), knocking him to the ground.  Deputy Gardner, presumably unaware that he had collided with a runner, continued driving.  Dr. Nocella, who was shocked and in pain, got up and continued running.

Between miles six and seven, Deputy Gardner turned his truck around and drove back in the same lane, this time following the direction of the racecourse.  As the truck passed by again, Dr. Nocella flagged down Deputy Gardner and confronted him about the collision.  Deputy Gardner gave Dr. Nocella his badge number, but he did not acknowledge what he had done, nor did he offer to help.  The truck continued.  Dr. Nocella reported this incident to two Utah Highway Patrol troopers at miles seven and fourteen, and he briefly spoke with volunteer medics at mile seventeen.  He finished the race, coming nowhere close to qualifying for Boston.  After the race, he sought medical treatment and counseling for the physical injuries and psychological trauma that he suffered.

Dr. Nocella sued Deputy Gardner and the County in the Fourth Judicial District Court for Wasatch County, Utah.  (Compl., ECF No. 2-1.)  While he did not precisely identify his causes of action, it appears that there are two claims against Deputy Gardner and two against the County. Against Deputy Gardner, Dr. Nocella first recites the elements of a 42 U.S.C. § 1983 claim for violating clearly established constitutional rights; second, he lists the familiar elements of common-law negligence.  His claims against the County seem to be solely under § 1983 (more

specifically, under <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978)).  The court discerns two

distinct claims: (1) municipal liability for establishing improper policies and practices and

(2) failing to properly supervise and train Deputy Gardner.  The Defendants removed the case,

invoking the court's federal-question jurisdiction (ECF No. 2), and then answered the complaint.

(ECF No. 3.)  Now they seek to obtain partial judgment on the pleadings.  (ECF No. 9.)

## LEGAL STANDARD

The court reviews a Rule 12(c) motion for judgment on the pleadings much as it would a

Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA</u>,

442 F.3d 1239, 1244 (10th Cir. 2006), <u>abrogated on other grounds as recognized in</u> <u>Magnus, Inc.</u>

<u>v. Diamond State Ins. Co.</u>, 545 F. App'x 750, 753 (10th Cir. 2013).  Accordingly, the court

"accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable

inferences from the pleadings in favor of the same."  <u>Id.</u>  "Judgment on the pleadings is

appropriate only when 'the moving party has clearly established that no material issue of fact

remains to be resolved and the party is entitled to judgment as a matter of law.'"  <u>Sanders v.</u>

<u>Mountain Am. Fed. Credit Union</u>, 689 F.3d 1138, 1141 (10th Cir. 2012) (quoting <u>Park Univ.</u>,

442 F.3d at 1244).

## ANALYSIS

The pertinent causes of action against both Defendants are based on 42 U.S.C. § 1983.

That statute states:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United
> States . . . to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law[.]

The complaint states three § 1983 claims: (1) Deputy Gardner's depriving Dr. Nocella of his

constitutional rights, (2) Wasatch County's establishing policies and practices that led to Deputy

Gardner's depriving Dr. Nocella of his constitutional rights, and (3) Wasatch County's failing to properly train and supervise Deputy Gardner.  The claims against the County are wholly dependent on whether Deputy Gardner violated the Constitution, so the court will start there.

## I.      Section 1983 Claim Against Deputy Gardner

First, Dr. Nocella claims that Deputy Gardner should be held liable under 42 U.S.C. § 1983 because (1) Deputy Gardner acted under color of state law, (2) Deputy Gardner deprived Dr. Nocella of his Fourth Amendment constitutional rights, (3) Dr. Nocella suffered damages. Deputy Gardner raises qualified immunity as a defense.

Qualified immunity is an immunity from suit, not an affirmative defense to liability. Pearson v. Callahan, 555 U.S. 223, 231 (2009).  Once a police officer raises qualified immunity, the burden shifts to the plaintiff to establish two prongs.  Hollingsworth v. Hill, 110 F.3d 733, 737–38 (10th Cir. 1997).  First, the plaintiff must show that the officer "violated a federal statutory or constitutional right."  District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018). Second, the plaintiff must show that "the unlawfulness of [the officer's] conduct was 'clearly established at the time.'"  Id. (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).  The court is free to examine the two prongs of the qualified immunity analysis in either order.  Pearson, 555 U.S. at 236.

Here, because the constitutional issue is clearer, the court will start with the first prong. And because either prong can be dispositive, if Dr. Nocella fails to allege that Deputy Gardner violated the Fourth Amendment,[1] the court need not inquire into whether the relevant law was

---

[1] "[T]he Fourth Amendment applies against state law enforcement officials as incorporated through the Due Process Clause of the Fourteenth Amendment."  United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (citing Mapp v. Ohio, 367 U.S. 643, 655 (1961)).  For simplicity, the court will refer only to the Fourth Amendment.

clearly established.  Deputy Gardner's actions did not violate the Fourth Amendment.  As a result, he is entitled to qualified immunity on the § 1983 claim.

A.  Fourth Amendment Seizures

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Dr. Nocella argues that when Deputy Gardner hit him with his truck, Deputy Gardner effected an unreasonable seizure.  The court must first determine whether Dr. Nocella was seized.  If he was, the court must then ask whether that seizure was unreasonable.

A police officer seizes someone when he uses "physical force" or a "show of authority" to "'restrain[] the liberty' of the person."  Torres v. Madrid, 141 S. Ct. 989, 995 (2021) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)).  The Torres Court distinguished between seizures by control and seizures by force.  Id. at 1001.  A seizure by control is what happened to the petitioner in Brower v. County of Inyo, 489 U.S. 593 (1989).  In Brower, the police set up a roadblock to end a car chase.  This obstruction caused the petitioner to crash his car.  The Court held that the petitioner was seized because the roadblock was a "governmental termination of freedom of movement through means intentionally applied."  Id. at 597 (cited in Torres, 141 S. Ct. at 1001).  A seizure by force, on the other hand, "requires the use of force with intent to restrain. Accidental force will not qualify. Nor will force intentionally applied for some other purpose satisfy this rule."  Torres, 141 S. Ct. at 998 (citing County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998)).  This is an objective inquiry.  Id.  One example of such a seizure comes from Torres itself.  When officers shot the petitioner to stop her from fleeing the scene—despite her failure to yield to the officers—they had seized her by force.  Id. at 1003.

/ / /

B.  <u>What Kind of Intent Matters?</u>

Intent is at the core of both types of seizures.  A seizure by control requires intent to

terminate freedom of movement and obtain control.  A seizure by force requires intent to restrain.

Perhaps realizing that proceeding under a negligence theory alone would doom his § 1983

claim,[2] Dr. Nocella ratchets up the rhetoric in his opposition memorandum.  He calls Deputy

Gardner's actions "an abuse of power," an "intentional[] use[] [of] deadly force," and a means

"to physically control and stop innocent citizens' movement without provocation."  (Opp'n at 5,

ECF No. 10.)  He later lowers his tone, arguing that because Deputy Gardner intended to move

the runners into the south lane by driving in their direction, the intent element is satisfied.

Dr. Nocella presumes that it is the intent to use the truck to funnel runners into the south

lane of Main Canyon Highway that is enough to establish a seizure.  This is not a reasonable

interpretation of what it means to restrict someone's freedom of movement for Fourth

Amendment purposes.  There is no indication that Deputy Gardner stopped, detained,

apprehended, arrested, or cornered the runners, but simply directed them into the south lane so

that they could continue running along the marathon path.  The runners were not in flight, and

Deputy Gardner was not in hot pursuit.  Dr. Nocella attempts to analogize his case to out-of-

circuit cases involving police breaking up protests with tear gas and rubber bullets, but these

situations are not even remotely similar, nor are the cases controlling.

If the court were to accept Dr. Nocella's definition of seizure, Deputy Gardner would

have seized hundreds of marathon runners.  If that were the case, officers directing traffic after a

basketball game would be seizing the departing fans; officers speeding through a red light with

---

[2] In his memorandum, Dr. Nocella says that "Deputy Gardner's negligent driving . . . further support[s] that it was his intent to use his vehicle [to stop and forcefully remove runners]."  (Opp'n at 8–9, ECF No. 10.)  How Deputy Gardner's negligence can reveal anything about his intent remains to be seen.

lights and sirens activated would be seizing the drivers who slam on their brakes; officers who set up a roadblock on a flooded road would be seizing the drivers who must take an alternate route; and officers who rope off a park with crime-scene tape would be seizing the pedestrians who cannot walk through the park.

In short, that is not the intent that matters here.  Of course Deputy Gardner intended to force the runners to shift into the south lane of Main Canyon Road.  He knew what he was doing. But Dr. Nocella did not sue Deputy Gardner because he thinks that being forced to move over violates the Constitution.  Instead, if there really was a seizure, it happened when Deputy Gardner struck Dr. Nocella with the truck's side mirror, knocking him down.  And for the officer's actions to have been a seizure, the plaintiff must have been "stopped by the very instrumentality set in motion or put in place in order to achieve that result."  Brower, 489 U.S. at 599.  In other words, the officer's intent must match the officer's actions.

Take Brower, for example.  There, officers set up a roadblock with the intent of terminating the petitioner's movement.  The petitioner's car collided with the roadblock and came to a halt.  The intent matched the action, so there was a seizure.  Or consider the situation in Scott v. Harris, 550 U.S. 372 (2007).  There, an officer rammed the back of the respondent's car during a chase, intending to stop the car.  The respondent's car spun around and stopped. Again, the intent matched the action, so there was a seizure.  That link is missing here, where Dr. Nocella merely alleges that Deputy Gardner intended to intimidate runners into moving to the south lane, but that the result of that conduct was being hit by the truck.  An officer cannot seize someone whom he does not intend to strike.  If Dr. Nocella wants to allege a seizure, he must allege that Deputy Gardner intended to hit him with his truck and that he accomplished this objective.

C.  Deputy Gardner's Intent

Dr. Nocella does allege in the alternative that Deputy Gardner intended to hit him with his truck (Compl. ¶ 57), but this allegation cannot survive a motion to dismiss without supporting facts to make the intent plausible.  Although intent "may be alleged generally," Fed. R. Civ. P. 9(b), "'generally' is a relative term."  Iqbal, 556 U.S. at 686.  Plaintiffs do not need to plead intent to the same high standards as fraud or mistake, but this relative leniency "does not give [plaintiffs] license to evade the . . . strictures of Rule 8."  Id. at 686–87.  "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."  Id. at 686.  In other words, if a complaint alleges intent, but the facts point to something less than intent, dismissal is proper.  Here, the facts show carelessness, negligence, or even recklessness, but not intent.  "[W]ithout some further factual enhancement," Dr. Nocella's complaint "stops short of the line between possibility and plausibility."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

In his opposition memorandum, Dr. Nocella points to seven facts that he says make Deputy Gardner's intent plausible: Deputy Gardner did not use his siren, several runners jumped out of the truck's path, these "close calls" did not deter Deputy Gardner from continuing, Deputy Gardner struck Dr. Nocella, Deputy Gardner did not stop after the incident, Deputy Gardner turned the truck around and came back, and Deputy Gardner "did not act surprised" that he hit Dr. Nocella.[3]  The allegations are more consistent with negligence than intent.  It is entirely plausible that Deputy Gardner was negligent when he allegedly failed to use the truck's siren, drove too fast, drove dangerously close to the runners, hit a runner, and failed to stop after the

---

[3] This final fact, that Deputy Gardner "did not act surprised," is not in the complaint and is not entitled to a presumption of truth.

collision.  As the Defendants argue, none of these allegations shine any light on Deputy

Gardner's intent.  And none of these allegations connect the injury with the alleged intent, as

required by Brower.

Frankly, examining the complaint using the court's "judicial experience and common

sense," Iqbal, 556 U.S. at 679, Dr. Nocella's complaint does not pass muster.  Deputy Gardner's

actions at the Utah Valley Marathon were possibly negligent or even reckless, but it defies

common sense that a deputy sheriff intentionally hit a marathon runner with his truck because the

runner "did not comply quickly enough."  (Opp'n at 10, ECF No. 10.)  By all accounts, this

looks like an unfortunate accident—the early-morning collision between a large truck with a

large blind spot and a comparatively smaller person running perilously close to the truck.  In

short, there was no constitutional violation here, so Deputy Gardner is entitled to qualified

immunity.[4]  Because the Defendants have not moved to dismiss the negligence tort claim against

Deputy Gardner, Dr. Nocella is not out of luck; he will have an opportunity to pursue this claim

again moving forward.[5]  As for the § 1983 claim, the court must enter judgment in favor of

Deputy Gardner.

## II.      Section 1983 Monell Claims Against Wasatch County

Dr. Nocella's complaint makes out two distinct Monell claims against Wasatch County.

First, he alleges that (1) the County has established policies, practices, customs, and decisions,

(2) those policies relate to the "on-road management of marathon participants," (3) Deputy

Gardner acted in accordance with those policies, and (4) those policies led to Dr. Nocella's

---

[4] Even if Deputy Gardner's conduct violated the Fourth Amendment (so if there was a seizure and it was unreasonable), he did not violate a clearly established right.  Dr. Nocella fails to offer even a single precedent in support, beyond those defining constitutional rights "at a high level of generality."  Wesby, 138 S. Ct. at 589 (quoting Plumhoff v. Rickard, 572 U.S. 765, 779 (2014)).

[5] "[Q]ualified immunity is a creature of federal law—and therefore does not apply to state tort claims."  Ganley v. Jojola, 402 F. Supp. 3d 1021, 1101 (D.N.M. 2019).

injuries.  Second, he alleges that (1) Wasatch County was required to properly train and supervise its employees, (2) the County was deliberately indifferent about the proper training and supervision of its employees, and (3) that indifference led to Dr. Nocella's injuries.

Monell liability is not a respondeat superior theory of liability.  See Monell, 436 U.S. at 691.  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Id. at 694.  But when "there was no underlying constitutional violation by any of its officers," there can be no Monell liability.  Schaffer v. Salt Lake City Corp., 814 F.3d 1151, 1158 (10th Cir. 2016) (quoting Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993)).

Because Deputy Gardner did not violate the Fourth Amendment when he accidentally hit Dr. Nocella with his truck, Wasatch County cannot be held liable under Monell.  The court must therefore enter judgment in favor of the County on the claims against it.

### III.    Supplemental Jurisdiction

The only remaining claim against any Defendant is the negligence claim against Deputy Gardner.  Negligence comes from the common law.  Although the court exercised supplemental jurisdiction over this claim while it considered the federal causes of action, the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  This case was removed less than four months ago, so neither the parties nor the court have expended many resources yet.  Consequently, the court declines to further exercise supplemental jurisdiction and DISMISSES this claim without prejudice so that Dr. Nocella can refile his complaint in state court.

Accordingly,

**IT IS ORDERED** that the Defendants' motion for partial judgment on the pleadings is GRANTED.  The court directs the Clerk of the Court to enter judgment in favor of Deputy Gardner and Wasatch County on the three § 1983 claims.

**IT IS FURTHER ORDERED** that the remaining negligence claim against Deputy Gardner is DISMISSED without prejudice.

DATED this 29th day of November, 2021.

BY THE COURT:

TENA CAMPBELL
United States District Judge